Filed 3/5/98 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1998 ND 51

Julie A. Nesseth, formerly

known as Julie A. Powers, Plaintiff and Appellant

v.

Magdalene Omlid, Defendant and Appellee

Civil No. 970099

Appeal from the District Court for Grand Forks County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Opinion of the Court by Meschke, Justice.

German, Neil & Hasbrouck, Ltd., 208 Third Avenue N.W., East Grand Forks, MN 56721, for plaintiff and appellant; argued by Sean Novak, Third Year Law Student.  Appearance by Raymond J. German.

Pearson, Christensen, Larivee, Clapp, Fiedler, Fischer & Jensen, P.O. Box 5758, Grand Forks, ND 58206-5758, for defendant and appellee; argued by Jay H. Fiedler.

Nesseth v. Omlid

Civil No. 970099

MESCHKE, Justice.

[¶1] Julie Nesseth appealed the judgment and the denial of her motion for a new trial after a jury awarded only medical expenses of $5,243.80 for her injuries in an automobile collision.  We affirm.

[¶2] On September 20, 1988, Julie, driving a borrowed auto, stopped at a University Avenue intersection in Grand Forks.  She was hit from behind by Magdalene Omlid's auto.  The impact pushed Julie's auto into the one ahead of her, sending that driver to the hospital.  After speaking to police at the scene, Julie left to attend her cousin's funeral.  At the funeral, she fainted and was taken to the hospital emergency room, where x-rays of her knees and neck were taken.  Julie was given anti-inflammatory medicine and sent home.

[¶3] After the collision, Julie frequently complained of pain in her neck and knees, and she sought treatment from numerous doctors and chiropractors.  In 1993, a doctor performed arthroscopic surgery on her knee.  Five years after the collision, Julie sued Magdalene for her injuries caused by Magdalene's negligence.

[¶4] Because Magdalene admitted negligence before the trial, the only issues for the jury were proximate cause and damages.  The jury found Magdalene's negligence proximately caused Julie's injuries and awarded Julie $5,243.80 for medical expenses, but nothing for pain and discomfort, loss of productive time, permanent disability, or future damages.  Under NDCC ch. 26.1-41, North Dakota's Auto Reparations Act, the court off-set the verdict by no-

fault payments paid to or payable to Julie.  
See
 NDCC 26.1-41-

08(1)(b).  This left Julie without any recovery.  Additionally, as authorized by NDRCivP 68(a), because Magdalene had made, and Julie had not accepted a formal offer of settlement for $40,000, the court entered a judgment against Julie and for Magdalene for costs of $13,132.05.

[¶5] Julie moved for a new trial, alleging irregularities in the trial and insufficiency of the evidence for the verdict.  
See
 NDRCivP 59(1) and (6).  The trial court denied the motion for a new trial, concluding comments by the defendant's attorney had not affected Julie's right to a fair trial, and the verdict was supported with substantial evidence.  Julie appealed.

[¶6] Julie argues the trial court erred in denying her motion for a new trial.  "We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard."  
Blessum v. Shelver
, 1997 ND 152, ¶20, 567 N.W.2d 844 (citing 
Ebach v. Ralston
, 510 N.W.2d 604, 611 (N.D. 1994)).  A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably.  
First Nat. Bank & Trust v. Brakken
, 468 N.W.2d 633, 636 (N.D. 1991).  We are not convinced the trial court abused its discretion in this case.

[¶7] Julie contends the denial of a new trial was erroneous because Magdalene's attorney made many improper remarks, particularly characterizing this case as "only being about money and nothing else."  She also contends Magdalene's attorney made improper comments about her, implying that she was "dishonest and motivated by money."  Julie also claims Magdalene's attorney insinuated that Magdalene did not have insurance and would have to pay any damages awarded personally.  Julie argues these improper statements were prejudicial and justify a new trial.

[¶8] Julie, however, did not object when these comments were made, nor did she request a curative instruction.  "In general, counsel must make a timely objection to an improper argument and must ask the trial court to give a curative instruction to the jury.  Failure to object waives the improper argument."  
Blessum
, 1997 ND 152, ¶30 (citations omitted).  The only exception to this rule "is when the misconduct of counsel is so severe that it affects that party's substantial rights or constitutes a denial of a fair trial, thereby placing an independent duty upon the court to confine the attorney to the permissible bounds of argument, where necessary, and admonish the jury."  
Andrews v. O'Hearn
, 387 N.W.2d 716, 731 (N.D. 1986).  Here, Julie neglected to object to the comments she now complains about.  Nor was the severity of the comments made so great as to cause the trial court to step in on its own.  As we stated in 
Andrews
, 387 N.W.2d at 731 (quoting 
State v. Kunkel
, 366 N.W.2d 799, 803 (N.D. 1985)):

[T]he scope and substance of the opening and closing arguments of counsel are under the control and discretion of the trial court, and this exercise of discretion will not be reversed by this court on the ground that an argument to the jury was prejudicial unless a clear abuse of discretion is shown.

We conclude the trial court did not abuse its discretion by concluding these comments did not require independent court intervention.  Therefore, Julie's failure to object forfeited any claim of error in the improper arguments.

[¶9] In 
Blessum
, 1997 ND 152, ¶33, we affirmed the denial of a new trial although Blessum's attorney had made numerous improper comments.  We explained:

Although arguments of Blessum's attorney were improper, they were not so serious as to deprive Shelver of a fair trial when there was no objection that would have given the trial court an opportunity to take corrective action.  In assessing prejudice, we consider the analysis of the trial court because it was in a better position to weigh the impact of the misconduct.

Id
.  Here, the trial court thoroughly and thoughtfully explained its conclusion that the allegedly improper comments did not prejudice Julie:

By implying [Julie's] motives were less than honorable in seeking money damages, [Magdalene] was certainly within the bounds of proper procedure, notwithstanding that the comments border on argument rather than a mere statement of the evidence.  The fact of where [Julie] lives, the salary she made following the accident, that she filed bankruptcy and had been involved in at least one other lawsuit, are all facts relevant to past and present loss of productive time under the damages section on the special verdict form.  Again, the statements appear somewhat argumentative but not so severe as to deprive [Julie] of a fair trial.

. . . Lastly, the comments regarding [Magdalene]'s age and health appear to the court that they were made to invoke sympathy, and with knowledge that [Magdalene] would not be testifying.  However, in light of the fact that she would be absent during the trial, possibly giving the jury cause to believe that [Magdalene] did not care about the outcome of the case, such comments are not totally inappropriate.  These comments simply do not rise to the level of unfairness as to deprive [Julie] of a fair trial or of any substantial right. [Julie] waived her right to new trial and appeal in regard to those comments when she failed to make a timely objection and ask this Court to admonish the jury accordingly. 

[Julie] alleges that [Magdalene] made 35 inappropriate comments during voir dire.  As with the opening statement, [Julie] now objects to [Magdalene's] questions about "salesmanship", "greed", "exaggeration", "striking it rich", "winning the lottery", and "excessive and runaway verdicts".  Of course, counsel for a party in a negligence action must ask the jury some questions in order to discover any preformed ideas regarding excessive verdicts and to adduce opinions about credibility assessments which the jury must make.  As during the opening statements, [Julie] failed to object or ask for any ruling as to [Magdalene]'s questions to the jury.  This Court cannot agree that the questions were so outrageous as to have affected [Julie]'s substantial rights nor to have denied a fair trial. . . .  

[¶10] Julie also argues, although she did not object or request a curative instruction at trial, she was prejudiced by the following statement of Magdalene's attorney, made during opening statements:

We are here on very serious business because we are here to determine how much money an elderly woman is going to be required to pay Julie Nesseth as a result of a -- what can only be referred to as a minor collision that occurred eight years ago.

Julie asserts "[s]uch a statement clearly implies that [Magdalene], and not an insurance company, would have to pay for [Julie]'s injuries."  Equating this statement with the one discussed in 
Priel v. R.E.D., Inc.
, 392 N.W.2d 65, 67 (N.D. 1986), Julie claims the trial court erred by not granting her motion for a new trial.

[¶11] In 
Priel
, however, a new trial was granted only after the defendant's attorney stated "[w]e are talking about money that my client will have to pay 
out of his own pocket
."  
Id
.  (our emphasis).  In contrast, the statement here does not directly imply that Magdalene was not insured but, in the words of the trial court, "constitute[d] a fair description of the issues before the jury . . . ."  We agree the comments made, while borderline, did not have a significant prejudicial effect on the trial.  Therefore, we conclude the trial court did not err in denying Julie's motion for a new trial for improper arguments and comments by defendant's attorney.

[¶12] Julie contends the jury's verdict was "perverse, insufficient in light of the evidence, and irreconcilable" because the jury failed to award her "adequate damages despite evidence presented documenting expenses . . . incurred as a result of the collision."  As we explained in 
Okken v. Okken
, 325 N.W.2d 264, 269 (N.D. 1982), a trial court has discretion to grant a new trial if, in weighing all the evidence, it determines the verdict "is against the weight of the evidence."

[¶13] Still, "[t]his court must, in determining the sufficiency of the evidence to support the jury's award of damages, view the evidence in a light most favorable to the verdict."  
Roberts v. Hail Unlimited, Div. of Int'l Bus.
, 358 N.W.2d 776, 780 (N.D. 1984).  In general, a court should not disturb a jury's verdict of damages unless the amount is "so excessive or inadequate as to be without support in the evidence."  
Slaubaugh v. Slaubaugh
, 466 N.W.2d 573, 576 (N.D. 1991) (citing 
Stoner v. Nash Finch, Inc.
, 446 N.W.2d 747, 753 (N.D. 1989)).  "[W]hen injuries are 'uncertain and based upon opinion . . . it is entirely within the province of the jury to find the amount of damages, if any, and it would be an invasion of the jury's function for the court to direct the finding of a certain amount.'"  
Usry v. Theusch
, 521 N.W.2d 918, 919 (N.D. 1994)(quoting 
McCommon v. Hennings
, 283 N.W.2d 166, 169 (N.D. 1979)).  Here, without objection, the jury was instructed to "consider 
each
 of the following items of claimed detriment [Medical Expense, Loss of Productive Time, Pain, Discomfort, and Mental Anguish, and Permanent Disability] proximately resulting from the injury in question," and to award reasonable damages, "
if any
," for each item.  (emphasis ours).  These instructions were the law of the case, and as we explained in 
Grenz v. Kelsch
, 436 N.W.2d 552, 554 (N.D. 1989), "[u]nder the law as submitted by the trial court, the jury was free to award damages under one category, without awarding damages under another."

[¶14] In denying this motion for a new trial, the trial court reminded the litigants "the nature and extent of [Julie's] injuries was the focus of the trial."  Julie presented evidence her injuries were caused by the collision, and submitted medical bills totaling $12,761.01.  Magdalene presented evidence that Julie could not have suffered all of her claimed injuries from the collision.  Each called expert witnesses to testify for their positions.  As the trial court noted, "[t]he jury was able to weigh the credibility of each witness, including [Julie] herself, in determining the extent of her injuries and damages."  In fact, the jury awarded Julie significantly less than half of her claimed medical expenses.

[¶15] Julie argues the jury's award for medical expenses "without the award of damages for past economic loss, pain and suffering, and other non-economic damages is inconsistent and irreconcilable."  Julie asks us to follow 
Fontes v. Dixon
, 544 N.W.2d 869, 872 (N.D. 1996), and thus to conclude these inconsistencies warrant a new trial.  However, 
Fontes
 does not fit here.

[¶16] In 
Fontes
, 544 N.W.2d at 871, a jury awarded $10,000 in past non-economic damages, but nothing for past medical bills, past wage loss, future economic damages, or future non-economic damages.  On review, we concluded the verdict was inconsistent because the jury had found Fontes had sustained a "serious injury," as defined by NDCC 26.1-41-01(21), yet had not awarded any past economic damages.  
Fontes
 at 871.  Because a finding of "serious injury" could, in that case, follow only a conclusion that Fontes had incurred economic damages, having been disabled for at least 60 days, or having incurred medical expenses in excess of $2,500.00, we found the verdict was irreconcilable, and we remanded for a new trial.  
Id
. at 871-72.  Here, the verdict does not contain a comparable inconsistency, but rather indicates the jury found Julie's evidence about the extent of her injuries and medical expenses less credible than the evidence for Magdalene's position, but did decide some past economic damages were credible.

[¶17] When ruling on a motion for a new trial, a trial court must concisely state "the different grounds on which [it] is based . . . ."  NDRCivP 59(f).  "To sufficiently comply with Rule 59(f), all that must be provided is a clear statement of the reasons denying the motion."  
Hoge v. Hoge
, 281 N.W.2d 557, 560 (N.D. 1979).  Here, the trial court gave the required "clear statement":

The witnesses of each party testified and were cross- examined.  The jury was able to weigh the credibility of each witness, including [Julie] herself, in determining the extent of her injuries and damages.  This Court cannot say that the damage award is so inadequate as to be without support of the evidence.

We conclude the trial court did not abuse its discretion by denying Julie's motion for a new trial.

[¶18] We affirm the judgment and the order denying the motion for a new trial.

[¶19] Herbert L. Meschke

Dale V. Sandstrom

William A. Neumann

Gerald W. VandeWalle, C.J.

Nesseth, f/k/a Powers v. Omlid

Civil No. 970099

MARING, Justice, concurring in part and dissenting in part.

[¶20] I concur with the majority opinion with the exception of the conclusion the trial court did not abuse its discretion by denying Julie’s motion for a new trial on the ground that the jury’s verdict was perverse, insufficient in light of the evidence, and irreconcilable.  I dissent from this part of the opinion.

[¶21] The record reveals Julie claimed injuries to her head, neck, and knee as a result of the collision.  Julie testified regarding the pain she suffered as a result of each of these injuries.  She testified as to the course of treatment she received for these injuries and the medical expenses she incurred as a result of her treatment.  There is nothing in the record to indicate that Julie had ever seen a chiropractor for neck or head pain prior to this accident.  There is also no evidence of any treatment for her knee prior to this accident.  Magdalene did present evidence that Julie’s knee injury could have been caused by cheerleading or dancing rather than from the trauma to her knee in the accident.  Magdalene also presented evidence discrediting Julie’s claims of pain resulting from her head and neck injuries.  [¶22] The jury could have agreed with Magdalene that Julie did not sustain any injuries whatsoever in this accident or, if she did sustain an injury, it was so 
de minimis
 as to result in no significant pain and suffering.

[¶23] The jury, however, found that Magdalene’s negligence was a proximate cause of Julie’s injuries.  In addition, they awarded her $5,243.80 for past medical expenses.  Julie offered into evidence medical bills totaling $12,761.01.  She testified and the bills themselves make it clear these medical expenses related either to treatment for her head and neck injuries or treatment for her knee injury.  Based on the amounts of these medical bills, it is quite apparent the jury either believed she had sustained her claimed  substantial amount awarded, it would necessarily include her chiropractic treatments.  These were all pain-related treatments. If the award was for her knee injury, then the substantial amount of the medical awarded would necessarily include her knee surgery and post-surgery therapy.  Again, those would be pain-related medical expenses.

[¶24] Based on the jury instruction in this case, in order for the jury to award damages for past medical expenses they had to conclude the expenses were "reasonable" and “reasonably required and actually provided in treating the plaintiff.”  The jury awarded Julie zero for past pain, discomfort, and mental anguish.  My review of the record here leads me to the conclusion that the special verdict answers are inconsistent and irreconcilable.  “We uphold a jury’s special verdict on appeal whenever possible and we will set aside a jury’s special verdict only when it is perverse and clearly contrary to the evidence.”  
Reisenauer v. Schaefer
, 515 N.W.2d 152, 157 (N.D. 1994).  The test used for reconciling apparent conflicts in the jury’s special verdict answers is:

"‘[W]hether the answers may fairly be said to represent a 
logical and probable decision
 on the relevant issues as submitted.  If after a review of the district court’s judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, than the judgment must be reversed and the case remanded for a new trial.’"  
Grenz v. Kelsch
, 436 N.W.2d 552, 553 (N.D. 1989) [quoting 5A Moore’s Federal Practice ¶ 49.03[4], at 49-29 to 32 (1987)].

Fontes v. Dixon
, 544 N.W.2d 869, 871 (N.D. 1996).

[¶25] We pointed out in 
Slaubaugh v. Slaubaugh
, 466 N.W.2d 573, 577 (N.D. 1991):

The determination of damages for pain, suffering, and mental anguish is not “susceptible of arithmetical calculation,” but is largely dependent upon the “common knowledge, good sense and practical judgment of the jury.”  (Citation omitted.)  Thus, the determination of those damages rests largely within the sound discretion of the jury.  (Citation omitted.)  This is not to say, however, that the jury has absolute, unfettered discretion in setting damages for pain, suffering, mental anguish, and similar injuries.  Rather, these standards suggest that in each case there is an allowable range within which the jury is free to assess damages as it sees fit.

[¶26] Our court has reversed and remanded a case for a new trial where there has been a substantial award of past medical expenses but no award for past pain, discomfort, and mental anguish.  
Slaubaugh v. Slaubaugh
, 466 N.W.2d 573 (N.D. 1991).  In 
Slaubaugh
, we distinguished 
Grenz v. Kelsch
, 436 N.W.2d 552 (N.D. 1989), stating the question in 
Grenz
 was whether it was inconsistent for the jury to award damages for future loss of productive time but award nothing for future pain, discomfort, and mental anguish or permanent disability.  We held in 
Grenz
 it was not “illogical” for the jury to make this award.  We pointed out, however, that in 
Grenz
, “the jury did award damages for 
past
 pain, discomfort, and mental anguish.”  
Slaubaugh
, 466 N.W.2d at 577 n.1.

[¶27] A review of decisions from other jurisdictions reveals that some courts have held an award for medical expenses without an award for pain and suffering is inconsistent and requires reversal per se while other courts have used a more flexible approach based on examination of the evidence.  For a summary of citations see 
Snover v. McGraw
, 667 N.E.2d 1310, 1314-15 (Ill. 1996).  
See
 
generally
 Todd R. Smyth, Annotation, 
Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, but Failing to Award Damages for Pain and Suffering
, 55 A.L.R.4th 186 (1987).

[¶28] I do not suggest that we adopt an inflexible rule that every verdict awarding only damages for medical expenses in a personal injury action is inadequate as a matter of law.  However, where substantial medical expenses are awarded for pain-related treatment for injuries proximately caused by the accident, it is illogical to then award nothing for pain and discomfort.  Once the jury determined that these medical expenses resulting from Julie's injuries were recoverable, how could the jury disallow recovery for Julie’s pain and discomfort from the same injuries?  If the jury really believed that Julie had not suffered pain and discomfort as a result of her injuries, why did it award her $5,243.80 in damages for medical expenses which according to the evidence had to have included pain-related treatment?  If the jury really felt that her pain was so 
de minimis
 as to justify no award of damages for pain and suffering, why did it not limit her damages for past medical expenses to the cost of her initial hospitalization and diagnostic appointments and disallow any amounts for treatment?  Although the jury may have been entirely within its right to have rejected Julie’s evidence and to have found no injuries or damages, I cannot reconcile its award of $5,243.80 for treatment which based on the evidence had to include pain-related treatment with a finding of no pain and suffering.

[¶29] I, therefore, conclude the jury verdict of $5,243.80 for past medical expenses for treatment related to pain is inconsistent with a zero award for pain and discomfort.  I would remand the case for a new trial on the issue of damages.  I respectfully dissent.

[¶30] Mary Muehlen Maring